UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCISCO "DANIEL" FLORES, CONSTANTINO "FERNANDEZ" HERNANDEZ, ENRIQUE HERNANDEZ, VALERIANO "FERNANDO" SALVADOR, and ALEJANDRO JIMENEZ, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> ANJOST CORP. d/b/a ZARO'S BAKERY, STUART D. ZARO, and JOSEPH ZARO <br><br> Defendants. | No. 11 CV 1531 (RA) |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Michael J. Volpe
Adam G. Possidente
**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas
24th Floor
New York, NY 10020
(212) 307-5500 (tel.)
(212) 307-5598 (fax)

*Counsel for Defendants Anjost Corp,*
*d/b/a Zaro's Bakery, Stuart D. Zaro,*
*and Joseph Zaro*

September 28, 2012

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT PROCEDURAL HISTORY.................................................................... 3

ARGUMENT ................................................................................................................ 5

    I.     PLAINTIFFS' MOTION IS UNTIMELY BECAUSE THE TIME TO FILE SUMMARY JUDGMENT EXPIRED MONTHS AGO ........................................... 6

    II.    PLAINTIFFS CANNOT ESTABLISH ANY VIOLATIONS OF WORLD YACHT ................................................................................. 7

          A.    The Service Charge Is Not Only A Gratuity ........................................... 8
          B.    The Delivery Charge Is Not A Gratuity................................................. 11

    III.   THE TIPPED EMPLOYEE CLASS CANNOT ESTABLISH THAT DEFENDANTS VIOLATED ANY MINIMUM WAGE LAWS .................................. 12

    IV.   DEFENDANTS HAVE NOT VIOLATED APPLICABLE OVERTIME REGULATIONS ........................................................................... 14

    V.    PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS FAILED TO PAY THE ENTIRE CLASS SPREAD OF HOURS COMPENSATION......................... 15

    VI.   DEFENDANTS' WAGE STATEMENTS COMPLY WITH ALL APPLICABLE REGULATIONS ......................................................... 17

    VII.  DEFENDANTS DO NOT IMPROPERLY DEDUCT FOR THE COST OF UNIFORMS FROM PLAINTIFFS' COMPENSATION................................. 20

    VIII. PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES ......................... 22

CONCLUSION............................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page (s)**

**Cases**

*Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690
(S.D.N.Y. 2009)........................................................................................................18

*Baker v. Dorfman*, 99 Civ. 9385 (DLC), 2000 WL 1010285 (S.D.N.Y.
July 21, 2000) ............................................................................................................6

*CFCU Cmty. Credit Union v. Hayward*, 552 F. 3d 253 (2d Cir. 2009)..........................19

*D'Amico v. City of N. Y.*, 132 F.3d 145 (2d Cir. 1998) ...................................................8

*Flores v. Anjost Corp.*, No. 11 Civ. 1531(CM), 2012 WL 2339267
(S.D.N.Y. June 19, 2012)................................................................................. *passim*

*Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2011
WL 317971 (E.D.N.Y.  Jan. 28, 2011) ...................................................................23

*Franklin v. Breton Int'l, Inc.*, No. 06 Civ 4877 (DLC), 2006 WL 3591949
(S.D.N.Y. Dec. 11, 2006)........................................................................................17

*Gayle v. Harry's Nurses Registry, Inc.*, 07-CV-4672 (NGG) (MDG), 2010
WL 5477727 (E.D.N.Y. Dec. 30, 2010)..................................................................23

*Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311 (S.D.N.Y. 2001)..............................23

*Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975) ......................5

*In re Kummerfeld*, 444 B.R. 28 (Bankr. S.D.N.Y. 2011).................................................6

*In re SCOR Holding (Swiz.) AG Litig.*, 537 F. Supp. 2d. 556 (S.D.N.Y.
2008) ........................................................................................................................22

*Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010) .............................21

*Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007).................................21

*Malena v. Victoria's Secret Direct, LLC*, No. 09 Civ. 5849(JPO), 2012
WL 3542192 (S.D.N.Y. Aug. 16, 2012)..................................................................17

*Martin v. Restaurant Assocs. Events Corp.*, 937 N.Y.S.2d 556 (N.Y. Sup.
Ct., Westchester County, Jan. 12, 2012)....................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574
(1986) .........................................................................................................................5

*McLee v. Chrysler Corp.*, 109 F.3d 130 (2d Cir. 1997) ....................................................5

*Myers v. Hertz Corp.*, 624 F. 3d 537 (2d Cir. 2010) ..........................................4, 14, 15

*NAS Elec., Inc. v. Transtech Elec. PTE Ltd.*, 262 F. Supp. 2d 134
   (S.D.N.Y. 2003) ....................................................................................6

*New York v. Sullivan*, 74 N.Y.2d 305 (1989) ...............................................................19

*Paz v. Piedra*, No. 09 Civ. 03977(LAK)(GWG), 2012 WL 121103
   (S.D.N.Y. Jan. 12, 2012). ..................................................................23

*Ramirez v. CSJ & Co., Inc.*, No. 06 Civ. 13677(LAK), 2007 WL 700831
   (S.D.N.Y. Mar. 6, 2007) ....................................................................21

*Reilly v. Richmond Country Club*, 77 A.D.3d 718 (2d Dep't 2010) ...........................11

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) .................................................7, 11

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) .......................................10

*Tompkins v. Allied Barton Sec. Servs.*, No. 09 Civ. 1954 (RMB) (JLC),
   2010 WL 1416066 (S.D.N.Y. Apr. 8, 2010) .......................................22

*U.S. v. Magassouba*, 544 F. 3d 387 (2d Cir. 2008) ....................................................18

*United States v. Rem*, 38 F.3d 634 (2d Cir. 1994) .......................................................5

*Zubair v. Entech Eng'g P.C.*, 808 F. Supp. 2d 592 (S.D.N.Y. 2011) .........................25

**Statutes**

29 U.S.C. § 203(m) .......................................................................................................12

N.Y. COMP. CODES R. & REGS. tit. 12, § 146..............................................................13

N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.3 .......................................................14

N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.2 .......................................................14

N.Y. COMP. CODES R. & REGS. tit. 12, § 137-3.13 .....................................................21

N.Y. LABOR LAW § 195.1(a) .......................................................................................18

N.Y. LABOR LAW § 195.3 ...........................................................................................18

## PRELIMINARY STATEMENT

By filing this motion, Plaintiffs have blatantly disregarded the clear deadline for summary judgment imposed by the Civil Case Management Order in place in this matter.  Given that the deadline for such motions expired in February 2012, more than five months before this motion was filed, Plaintiffs' actions are particularly egregious.  The Court need go no further before denying this motion, as there is no basis to consider such a facially untimely motion.

Even if the Court does delve into the merits here, that investigation will do little more than illuminate the widespread deficiencies in Plaintiffs' motion.  This case was originally brought by a small group of delivery workers.  After the close of discovery, Plaintiffs amended their complaint for a second time.  By that Second Amended Complaint, Plaintiffs now allege a variety of perceived violations of New York's Labor Law on behalf of a class consisting of nearly all of Defendants' current and former employees.  Plaintiffs also seek to certify a collective action under the Fair Labor Standards Act, but that collective action has not received full certification from this Court.  Among other things, Plaintiffs allege that Defendants failed to pay a group of delivery workers the minimum wage, improperly calculated their overtime wages, and improperly retained so-called "service charges" and "delivery charges."  Plaintiffs also allege that Defendants failed to pay additional "spread of hours" pay to certain employees, that Defendants improperly deducted the cost of a uniform from Plaintiffs' wages, and provided employees with improper wage statements.

The same fundamental flaw plagues many of these claims: Plaintiffs simply have no evidence of these alleged violations.  In fact, Plaintiffs' motion is almost exclusively grounded in extrapolation from the wage statements of a few employees and the testimony of one Zaro's employee.  Acknowledging this lack of evidence, Plaintiffs seek summary judgment solely on

liability, despite numerous factual issues and evidentiary holes.  This deficiency is largely due to the fact that class discovery, which only began a month after Plaintiffs filed this motion, is currently pending.  Plaintiffs have therefore conducted no discovery at all concerning members of the class other than Plaintiffs.  And, because the putative FLSA collective action has only received conditional certification, it is impossible to conduct discovery concerning those putative plaintiffs.  This abject lack of documentary evidence dooms Plaintiffs' claims for, among other things, violations of the minimum wage, overtime, and spread of hours requirements.

Even apart from these evidentiary deficiencies, Plaintiffs' brief is still meritless.  For instance, Plaintiffs claim that they are entitled to summary judgment on their claim that Plaintiffs should recover the entirety of the so-called "service charges" and "delivery charges" that Defendants charges to customers as part of their catering delivery service.  But Plaintiffs cannot establish that, as case law requires, a "reasonable customer" would have believed or expected that these charges were solely gratuities intended only for delivery workers.  Rather, the record makes clear that Defendants informed their customers of the true nature of those charges.  A variety of facts present in Defendants' invoices — facts which Plaintiffs ignore or gloss over in their moving papers — further buttresses this determination.  Among other things, Defendants' invoices have an independent line for tips, or reflect that customers left additional tips when placing orders.  Such facts evidence a clear understanding that customers understood that the service charges and delivery charges were not merely gratuities for delivery workers.

Similarly flawed is Plaintiffs' claim that Defendants' wage statements are somehow deficient.  This claim is based on a fundamental misinterpretation of otherwise clear statutory language.  Plaintiffs confuse the language governing *annual* pay statements (which are not at

issue here) with the requirements for *weekly* wage statements, or pay stubs.  As the pay stubs that Defendants distribute conform to all of the requirements of the law, that claim must be denied.

Plaintiffs' claim that Defendants improperly charge employees for the cost of a uniform claim fails because there is a clear issue of fact as to whether the alleged "uniform" meets the statutory "ordinary dress" exception.  Courts in this District have previously rejected claims for summary judgment for this precise issue, and this Court should, as well.

Most galling, Plaintiffs seek liquidated damages despite expressly agreeing to waive precisely that in a previous filing.  In their class certification brief, Plaintiffs expressly waived their right to liquidated damages as a condition of certification.  Judge McMahon accepted that waiver in her decision on class certification.  *See Flores v. Anjost Corp.*, No. 11 Civ. 1531(CM), 2012 WL 2339267, at *5 (S.D.N.Y. June 19, 2012) ("Plaintiffs have further agreed to waive liquidated damages as a condition of being certified as a class.").  There is no reason to revoke Plaintiffs' waiver that has been accepted by the Court and is the law of this case.

For the reasons above and those that follow, the Court should deny Plaintiffs' motion for summary judgment.

## RELEVANT PROCEDURAL HISTORY

Defendants Anjost Corp. d/b/a Zaro's Bakery, Stuart D. Zaro, and Joseph Zaro (collectively, "Defendants") operate bakeries and eateries throughout New York and New Jersey.[1]  Plaintiffs Francisco "Daniel" Flores, Constantino "Fernandez" Hernandez, Enrique Hernandez, Valeriano "Fernando" Salvador, and Alejandro Jimenez (collectively, the "Named Plaintiffs") are five delivery workers at Defendants' store located at 920 Broadway in Manhattan.  On March 7, 2011, Plaintiffs instituted this action, alleging violations of federal and

---

[1] Plaintiffs have previously stipulated to exclude all of Defendants' New Jersey employees from this action.

New York State wage and hour laws.  Plaintiffs have since amended their complaint twice.  In their Second Amended Complaint, Plaintiffs now allege that Defendants (1) failed to pay the minimum wage required under the Fair Labor Standards Act (the "FLSA"); (2) failed to pay one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek in violation of the FLSA and New York State's Labor Law (the "Labor Law"); (3) withheld payments owed to Plaintiffs under the "spread of hours" premium set forth within the Labor Law; (4) misappropriated gratuity payments related to food deliveries in violation of the Labor Law; (5) improperly deducted the cost of uniforms from Plaintiffs' wages; and (6) failed to provide wage statements that satisfy the statutory requirements of the Labor Law.

On November 1, 2011, this Court conditionally certified a group of "tipped employees" as a collective action under the FLSA.  Pursuant to an agreement between the parties, noticing of that conditional collective action was suspended until a decision by the Court on Plaintiffs' motion for class certification under Fed. R. Civ. P. 23.  That noticing is currently occurring, and has not been completed.  Accordingly, Plaintiffs have not received full certification pursuant to the two-step procedure codified by the Second Circuit.  *See Myers v. Hertz Corp.*, 624 F. 3d 537, 555 (2d Cir. 2010) (approving use of two-step test to determine whether FLSA collective action is appropriate).

Discovery closed on December 30, 2011.  Thereafter, Plaintiffs amended their complaint for a second time.  The Second Amended Complaint expanded the proposed class to include nearly all of Defendants' employees, not merely tipped employees, for alleged violations of the spread of hours requirements, improper uniform deductions, and inappropriate wage statements.

Plaintiffs moved for Rule 23 class certification on January 12, 2012.  Judge McMahon granted Plaintiffs' Motion on June 19, 2012.  By that Order, Judge McMahon created three

4

classes: (1) "The Tipped Employee Class," consisting of all delivery persons seeking recovery for claims that Defendants did not pay them the correct minimum wage or overtime wage rates, as well as claims that Defendants inappropriately retained gratuities from those employees; (2) "The Spread of Hours and Wage Statement Class," which contains current and former non-exempt employees of Defendants seeking recovery for Defendants' alleged failure to pay them spread of hours compensation, as well as claims that Defendants did not distribute adequate wage statements to employees; and (3) "The Uniform Claims Class," which consists of current and former delivery and retail employees claiming that Defendants improperly deducted the cost of a uniform from their wages. *See Flores*, 2012 WL 2339267, at *19.

This motion followed.

## ARGUMENT

On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted). "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

## I.   PLAINTIFFS' MOTION IS UNTIMELY BECAUSE THE TIME TO FILE SUMMARY JUDGMENT EXPIRED MONTHS AGO

Plaintiffs' motion must be denied because the deadline for summary judgment in this action passed over five months ago.  Pursuant to this matter's operative Civil Case Management Plan, summary judgment motions were due on or before February 13, 2012.  *See* Declaration of Adam G. Possidente in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Possidente Decl."), Ex. 1 at 2.  Despite that clear deadline, Plaintiffs filed this present motion on July 24, 2012, over five months late.  Courts have routinely rejected summary judgment motions as untimely in similar circumstances.  *See, e.g., In re Kummerfeld*, 444 B.R. 28, 35 n. 8 (Bankr. S.D.N.Y. 2011) ("According to a scheduling order issued in this case, Kummerfeld's motion is untimely as any such motions were to be filed by July 30, 2010.  Kummerfeld did not seek additional time to file the motion and it is denied as untimely."); *NAS Elec., Inc. v. Transtech Elec. PTE Ltd.,* 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003) ("The plaintiffs only filed their motion on December 2, 2002, even though the deadline for serving dispositive motions, as provided for in the second scheduling order entered pursuant to Fed. R. Civ. P. 16, expired on November 8, 2002.  The failure to abide by the Court's scheduling order without any showing of good cause is sufficient rounds to deny the plaintiffs' motion for summary judgment."); *Baker v. Dorfman*, 99 Civ. 9385 (DLC), 2000 WL 1010285, at *9 (S.D.N.Y. July 21, 2000) (denying summary judgment motion because, in part, the motion was "untimely under the Court's Scheduling Order").  Plaintiffs never sought an extension of the time to move for summary judgment, nor the Court's permission to file this obviously tardy motion.  Instead, Plaintiffs simply filed this motion on July 24, 2012, more than five months after the explicit deadline for summary judgment.  This motion is accordingly untimely, and must be denied.

Regardless, even if the motion were proper, Plaintiffs fare no better on the merits.

## II.   PLAINTIFFS CANNOT ESTABLISH ANY VIOLATIONS OF *WORLD YACHT*

The Tipped Employee Class[2] — the subclass of only a few delivery workers who seek to recover for these purported violations — wrongly contends that they are entitled to summary judgment on the issue of whether Defendants unlawfully withheld gratuities from them. Specifically, those employees allege that "Defendants retained at least 20% of the funds it charged to customers as a 'Service Charge.'  Second, Defendants' [sic] retained 100% of the funds it charged to customers as a 'Delivery Charge.'"  Pls. Br. at 5.  The Tipped Employee Class claims that these purported acts amount to Defendants' improper withholding of gratuities from delivery workers.  This contention fails because it is bedrocked on the untenable foundation that service charges and delivery charges are gratuities under *Samiento v. World Yacht*, the New York Court of Appeals case considering this issue.  Because neither charge is properly classified as a gratuity, summary judgment must be denied.

In *Samiento v. World Yacht, Inc.*, the Court of Appeals held that employers may not retain any portion of a service charge that a "reasonable patron" would believe was intended as a gratuity for service staff.  *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008).  The Court of Appeals held that the question of whether "a mandatory charge or fee is purported to be a gratuity" is "weighed against the expectation of the reasonable customer."  *Id.* at 79.  Thus, the Tipped Employee Class is entitled to summary judgment only if it can establish that there are no material issues of fact as to whether a reasonable customer would believe that the service charge or delivery charge was actually a gratuity.  Courts tasked to make such a determination have found that it is a fact intensive inquiry.  *See, e.g., Martin v. Restaurant Assocs. Events Corp.*, 937 N.Y.S.2d 556, 566 (N.Y. Sup. Ct., Westchester County, Jan. 12, 2012) (holding that "whether a

---

[2] Plaintiffs incorrectly imply that all Plaintiffs are able to make this claim, when in fact this claim is limited to only delivery workers.  *See Flores*, 2012 WL 2339267, at *19.

reasonable customer would believe that a mandatory service charge was being collected in lieu of a gratuity is dependent upon the totality of all of the circumstances, including all of the statements made or not made by the employer.  This is obviously a fact intensive inquiry").

The Tipped Employee Class cannot meet this burden.  Because a reasonable juror could easily determine that neither the service charge nor the delivery charge acts as solely a gratuity, summary judgment must be denied.  *Cf. D'Amico v. City of N. Y.*, 132 F.3d 145, 149 (2d Cir. 1998) ("A court may grant summary judgment only when no rational jury could find in favor of the non-moving party.").

### A.    The Service Charge Is Not Only A Gratuity

The Tipped Employee Class contends that the entirety of the service charge should be classified as a gratuity under *World Yacht*.  But it is clear that there are material facts in dispute on this issue and that a reasonable customer could easily understand that the charge is not just a gratuity.  Summary judgment must accordingly be denied.

First, as Plaintiffs' own brief acknowledges, catering invoices dating back years contain a line for "tips" in addition to a service charge.  *See, e.g.,* Possidente Decl., Ex. 2.  This alone allows a reasonable customer to conclude that the service charge is not only a gratuity.  Failing to recognize that dispositive problem, the Tipped Employee Class makes the conclusory contention that "[a] reasonable patron *could* assume that Service Charges and Delivery Charges would be the minimum amount to be provided to delivery people, and that the Gratuity line item [is] an option for additional tips to delivery people."  Pls. Br. at 9 (emphasis added).  The inclusion of "could" into this speculative argument does not save the Tipped Employee Class's claim.  To the contrary, it simply admits that an issue of fact exists: A reasonable patron "could" just as easily assume any number of things from the existence of both a service charge and a line for "tips" on

an invoice. Delving into what customers "could" understand is not an appropriate inquiry at summary judgment.

The Department of Labor's (the "DOL") guidance in examining a customer's interpretation of a service charge underlines this fact. In a March 11, 2010 Opinion Letter, the DOL noted that one pertinent factor in determining how to classify a charge is the existence of "a separate line labeled gratuity or tip on the contract, bill or pricing menu." Possidente Decl., Ex. 3 at 3. That is precisely what exists here. Including a line for tips in addition to the service charge is a clear indication to customers that the service charge is more than a gratuity. Summary judgment must be denied.

Two other critical facts provide more evidence that customers understood that the service charge was not merely a gratuity. First, customers frequently provided delivery workers with gratuities separate and apart from the service charge, including cash tips. *See, e.g.,* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 8:23-25); Declaration of Brian Zaro in Opposition to Plaintiffs' Motion for Summary Judgment ("Zaro Decl.") at ¶ 8. In fact, many invoices include both a service charge and a gratuity. *See* Possidente Decl., Ex. 2.[3] Second, when asked by customers, Defendants explain that the service charge is not only a gratuity, and that Defendants retain a portion of the service charge. *See* Zaro Decl., ¶ 7. Those disclosures are clearly effective. If customers believed that the service charge was just a gratuity, it follows that they would not give delivery workers additional tips above and beyond that charge. But customers have provided delivery workers with gratuities separate and apart from the service charge. Those customers accordingly almost certainly understood that the service charge was not simply a gratuity. In its March 11, 2010 Opinion Letter, the Department of Labor agreed, and stated that

---

[3] Delivery workers retain all cash tips and any tips added to an invoice. *See* Zaro Decl. at ¶ 10.

"[a]n employer may retain a portion of the service charge so long as the retention of that portion of the service charge is sufficiently disclosed so that the 'reasonable patron' would be aware that not all of the service charge will be going to the service staff."  Possidente Decl., Ex 3 at 2. Defendants make exactly those disclosures, and customers' inclusion of tips above and beyond the service charge speaks to their effectiveness.  This is more evidence that reasonable customers understood that the service charge was not just a gratuity.

Underscoring these verbal notifications is the fact that Defendants also placed explicit language in many of their invoices explaining how the service charge functions.  That additional language did not reflect any change in company policy; instead, it merely reflected what was already in place (i.e. that delivery workers received 80% of the service charge).  Although the Tipped Employee Class concedes in their brief that this language satisfies *World Yacht*, this language appeared on invoices months before Plaintiffs admit in their brief.  *See* Possidente Decl, Ex. 6 (invoices dated July 19, 2011 and July 25, 2011).  This dispute alone mandates denial of summary judgment.

Considered together, these factual questions preclude summary judgment.  Courts in this District have previously rejected summary judgment on similar facts.  For example, in *Spicer v. Pier Sixty LLC*, Judge Sand found that reasonable customers could disagree on whether a service charge providing "that 22% of food and beverage sales will be added to your bill" was a gratuity. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 331 (S.D.N.Y. 2010) (finding that "[r]ational juries could come to differing conclusions as to what a reasonable customer would believe for those events").  The service charge here — which, at 10%, is significantly lower than that in *Spicer* — falls into this category.  Just as in *Spicer*, a reasonable jury could conclude that the 10% service charge on Defendants' invoices was not a gratuity.  That is particularly the case

here, both because Defendants notified customers of the service charge in a variety of ways and because many clients clearly understood that the service charge was not a gratuity and gave additional tips to delivery workers. Other courts considering this issue have also denied summary judgment where, as here, a defendant raises triable issues of fact. *See, e.g., Reilly v. Richmond Country Club*, 77 A.D.3d 718, 719-20 (2d Dep't 2010) (upholding denial of motion for summary judgment on service charge issue where defendants raised triable issues of fact). Because there are clear issues of fact as to whether the service charge is a gratuity, summary judgment must be denied.

**B.      The Delivery Charge Is Not A Gratuity**

The Tipped Employee Class also claims that Defendants improperly withheld so-called "delivery charges" from delivery workers. This contention falls flat because, like the service charge, those charges are unequivocally not a gratuity. Instead, delivery charges are only added to a select number of invoices to offset uncommon costs incurred by the company.

The delivery charge is an administrative fee that is retained by Zaro's to recoup, among other things, transportation charges. Delivery charges are accordingly only employed on a select number of invoices, and the inclusion of such a charge is negotiated separately with each client on an individual basis. *See* Zaro Decl., ¶¶ 11-12; *see also* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 38:4-6). During those negotiations, Zaro's makes it clear that the delivery charge will be retained by the company. *See* Zaro Decl., ¶ 13. Those representations make it manifestly clear to customers that the charge was not a gratuity. Because Defendants fully disclose the true nature of delivery charges to each affected customer, Defendants have not violated *World Yacht*, and summary judgment must be denied. *See World Yacht*, 854 N.Y.S.2d at 79 (holding that

". . . the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer . . . ").

## III.    THE TIPPED EMPLOYEE CLASS CANNOT ESTABLISH THAT DEFENDANTS VIOLATED ANY MINIMUM WAGE LAWS

The Tipped Employee Class — and, again, not all Plaintiffs, as their moving brief implies — also contends that Defendants have violated applicable minimum wage regulations.  That claim largely revolves around the argument that Defendants are "ineligible to invoke the benefit of a tip credit because they did not allow [the Tipped Employee Class] to retain all of the tips that they earned." *See* Pls. Br. at 14.  This is demonstrably false.  As demonstrated above, Defendants do not improperly retain any gratuities.  The charges about which the Tipped Employee Class complains — the service charge and delivery charge — are simply not gratuities under *World Yacht*.  *See supra* Section II.   And delivery workers properly retain all tips, no matter how they are denominated.  *See* Zaro Decl., ¶ 10.  The Tipped Employee Class does not dispute that delivery workers retained any other tips or gratuities.  Nor could they: "clients will give additional tips, and those additional tips are given to [delivery workers] at 100 percent." *See, e.g.,* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 8:23-25).  Accordingly, as Defendants do not improperly retain any gratuities,

The Tipped Employee Class also contends that Defendants did not appropriately notify delivery workers that they would receive a reduced hourly wage on account of the tip credit.  These arguments fail because Defendants appropriately informed delivery workers that they were receiving a reduced wage due to the tip credit.  Under the FLSA, an employer may take a tip credit when the "employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee."  29 U.S.C. § 203(m).

When Defendants hire a new delivery worker, that worker is informed that, as a tipped employee, they will receive an hourly rate lower than the minimum wage because of the tip credit.  *See* Zaro Decl., ¶ 3.  Defendants thus inform all tipped employees of the tip credit, as required by the FLSA.  The Tipped Employee Class does not effectively challenge this; instead, those employees argue that Defendants "failed to even notify the Tipped Employee Class that they were retaining part of the [s]ervice [c]harge."  Pls. Br at 13.  But that contention — which is demonstrably false, *see* Zaro Decl., ¶ 5 — has no bearing on the question of whether Defendants are inadequately informing tipped employees about the tenets of the FLSA, the relevant issue here.  Regardless, even if the Tipped Employee Class actually disputed this point, the mere fact that Defendants provide that notice is enough to deny summary judgment.  For instance, in *Gillian v. Starjem Restaurant Corp.*, the Southern District denied a plaintiffs' motion for summary judgment on the question of whether defendant employer had complied with the FLSA's tip credit requirements.  In so doing, the Court noted that the parties had submitted starkly different declarations on that issue.  Judge Rakoff specifically held that "[g]iven these competing declarations, the Court concludes that whether notice of the tip credit was provided to plaintiffs Cesarska and Gillian must also be resolved by a jury."  *Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056(JSR), 2011 WL 4639842, at *5 (S.D.N.Y. Oct. 4, 2011).  The same result is demanded here.

Finally, Plaintiffs claim that Defendants cannot take a tip credit because they have violated Section 137-2.2 of the NYLL.  But that law was superseded by a new wage order on January 1, 2011.  *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 146 (effective Jan. 1, 2011).  The current version of the NYLL provides the following: "An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips

and if the employee has been notified of the tip credit as required in Section 146-2.2."  N.Y.
COMP. CODES R. & REGS. tit. 12, § 146-1.3.  As noted above, Defendants notify employees that
they take a tip credit from the wages of tipped employees.[4]  *See* Zaro Decl., ¶ 3.  Plaintiffs'
confusion about the wage and hour laws currently applicable to Defendants precludes summary
judgment.[5]

## IV.    DEFENDANTS HAVE NOT VIOLATED APPLICABLE OVERTIME REGULATIONS

The Tipped Employee Class also seeks summary judgment on the issue of whether
Defendants appropriately provided them with overtime compensation.  Once again, this claim is
limited to just the Tipped Employee Class, not all Plaintiffs.  As noted above, these employees
are members of an FLSA collective action, which is currently only conditionally certified
pursuant to the guidelines established by the Second Circuit.  *See Myers v. Hertz Corp.*, 624 F.3d
537, 555 (2d Cir. 2010).  But that putative collective action has not undergone the second, more
rigorous phase of review that occurs only after noticing is complete.  That phase requires that the
Court examine the full record to determine whether the individuals who have opted-in to the
collective action are similarly situated to the named Plaintiffs.  *See id.*  Pursuant to this Court's
Order, notices to potential members of the FLSA collective action could not be sent until
September 17, 2012.  *See* ECF Dkt. No. 84.  Despite this, Plaintiffs moved for summary
judgment on July 24, 2012.  But the parties have conducted no discovery on this issue; indeed,
until the noticing period is complete, it is unclear whether a collective action is appropriate,

---

[4] Section 146-2.2 requires that employers must provide employees with written notification of,
among other things, the tip credit.  *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.2.
However, because class discovery is still pending, Plaintiffs have not conducted any discovery
on this issue.  Without that discovery, summary judgment is simply premature.

[5] The motion must also be denied under the version of statutory language cited by Plaintiffs.
Through class discovery that is currently ongoing, Plaintiffs may be entitled to documents
establishing that Defendants distribute paystubs that notify employees of the tip credit.

much less which employees are members of that collective action, if it is even certified.  Because the FLSA requires that potential plaintiffs affirmatively opt-in to the action, such discovery is impossible at this time.  *See Myers*, 624 F.3d at 542 ("Unlike traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class…").  This same issue plagues Plaintiffs' entire motion: without clarity on which employees are actually class or collective action members — or whether a collective action is even appropriate in this situation — summary judgment is simply premature on any issue concerning the Tipped Employee Class, including overtime claims.  Because it is not clear who falls into the Tipped Employee Class, summary judgment is inappropriate.

## V.   PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS FAILED TO PAY THE ENTIRE CLASS SPREAD OF HOURS COMPENSATION

Plaintiffs next claim that they are entitled to summary judgment because "Defendants failed to pay Plaintiffs spread of hours compensation under [the] New York Labor Law."  Pls. Br. at 17.  This portion of the motion must be denied, for several reasons.

First, the evidence relied upon by Plaintiffs is woefully deficient.  Using only a single wage statement and the testimony of one Zaro's employee, Plaintiffs ask this Court to conclude that there are no issues of fact as to whether every single class member of the "Spread of Hours and Wage Statement Class" — more than two thousand potential class members — is entitled to spread of hours payments.  Even more galling, Plaintiffs have conducted absolutely no discovery on any of these potential class members. Instead, Plaintiffs rely on one wage statement and the deposition testimony of Larry Marcotrigiano — Defendants' controller, who has some overlapping responsibilities in enforcing minimum wage rates and assisting in establishing wage and hour policies.  During his deposition, Mr. Marcotrigiano testified that he "was not familiar

15

with [the term spread of hours]." *See* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 27:22-28:2). That single statement does not warrant summary judgment. The fact that a lone employee of Defendants may be unfamiliar with a term of art is simply an insufficient foundation for summary judgment across an entire class of employees. Although Plaintiffs make much of their claim that Mr. Marcotrigiano is "in charge of wage and hour compliance," it does not follow that he exercises exclusive control over that area. Instead, any wage and hour decisions are made only after discussions among a number of individuals, including Mr. Marcotrigiano. *See* Zaro Decl. at 14. The inability of one such employee who participates in those meetings to recall the meaning of a singular term during a deposition does not warrant summary judgment. That is particularly the case where, as here, significant factual issues exist, independent of Mr. Marcotrigiano's testimony.

At a minimum, issues of fact precluding summary judgment clearly exist because Plaintiff has not conducted any class discovery on this issue. When discovery closed on December 30, 2011, Plaintiffs had not conducted any class discovery. Pursuant to this Court's August 24, 2012 Order, the parties are currently engaged in class discovery. *See* ECF Dkt. No. 83. But that discovery is nowhere near complete and, more importantly, it was not even pending when Plaintiffs filed this motion on July 24, 2012. Until class discovery is complete, it is simply impossible to determine if members of the Spread of Hours and Wage Statement Class even have a claim for spread of hours.

That lack of discovery only reinforces the other infirmities that also plague Plaintiffs' claim here. As noted above, the class of employees seeking to recover for spread of hours pay — the Spread of Hours and Wage Statement Class — includes all of Defendants' current and former non-exempt employees. *See Flores*, 2012 WL 2339267, at *19. That class certainly

includes employees whose wages exceeded the minimum wage; in fact, at least one named

Plaintiff earned in excess of the minimum wage while employed by Defendants.  *See* Possidente

Decl, Ex. 8.  That individual did so while working as a dishwasher.  *See* Possidente Decl., Ex. 9

(A. Jimenez Depo. at 187:2-11).  By definition, those employees, as non-exempt employees of

Defendants, are part of the class at issue here.  They — and other similar employees — are also

exempt from the spread of hours requirement.  As courts in this District have repeatedly held,

employees making more than the minimum wage are simply not eligible to receive spread of

hours pay.  *See, e.g., Malena v. Victoria's Secret Direct, LLC*, No. 09 Civ. 5849(JPO), 2012 WL

3542192, at *16 (S.D.N.Y. Aug. 16, 2012) (granting employer summary judgment on spread of

hours claim where employee earner in excess of minimum wage); *Franklin v. Breton Int'l, Inc.*,

No. 06 Civ 4877 (DLC), 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (holding that the

spread of hours provision "applies only to workers earning the minimum wage").  Certainly, the

class includes other employees that also earned over the minimum wage.  However, because

Plaintiffs have not conducted any class discovery, it is impossible to determine whether any

employees are even eligible to receive any spread of hours pay — and there are clearly many

who are not — and, if any employees are eligible, whether they did not receive that payment.

Summary judgment must be denied.

## VI.   DEFENDANTS' "WAGE STATEMENTS" COMPLY WITH
## ALL APPLICABLE REGULATIONS

Plaintiffs, in an extremely confusing fashion, next contend that they are entitled to

summary judgment because Defendants have allegedly distributed "wage statements" — or

weekly paystubs — that do not conform to the requirements of New York's Wage Theft

Prevention Act (the "WTPA").  This statute, which became effective on April 9, 2011, requires

employers to provide weekly paystubs that include a host of basic information.  According to

Plaintiffs, Defendants' paystubs are lacking because they do not "list the employer's name and any names under which the employer does business (including trade names)." Pls. Br. at 19. But that requirement is nowhere in the applicable section of the statute. Instead, Plaintiffs have conflated the requirements of NYLL § 195.1(a), the section of the WTPA governing annual notices to employees, with those of NYLL § 195.3, which governs weekly paystubs.

Among other things, the WTPA requires employers to provide both annual wage notices and regular wage statements, or paystubs. Section 195.3, the portion of the WTPA covering those paystubs, requires that employers furnish employees with paystubs listing, among other things, the "name of [the] employer." *See* N.Y. LABOR LAW § 195.3. Tellingly, there is no requirement that Defendants provide trade names or "doing business as" names on these paystubs. Instead, that requirement only appears in Section 195.1(a), which governs yearly pay notices, not paystubs. *See* N.Y. LABOR LAW § 195.1(a) (requiring annual notices to employees to include "the name of the employer; any 'doing business as' names used by the employer . . ."). Plaintiffs have thus confused the requirements of Section 195.1(a), which does not apply to wage statements, with those of Section 195.3, which does.

The fact that the New York Legislature made this explicit distinction between annual notices and paystubs is dispositive here. By including the "doing business as" requirement in only Section 195.1, the Legislature clearly intended for that requirement to extend only to annual notices, and not paystubs. It is black letter law that where, as here, the language of a statute is clear on its face, the statute should be constructed to give effect to the plain meaning of its words. *See, e.g., U.S. v. Magassouba*, 544 F. 3d 387, 404 (2d Cir. 2008) ("Where statutory language is unambiguous, and where the statutory scheme is coherent and consistent, our inquiry need go no further" (citation and internal quotation marks omitted)); *Atlantic Recording Corp. v.*

*Project Playlist, Inc.*, 603 F. Supp. 2d 690, 703 (S.D.N.Y. 2009) (asserting that "'[i]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'" (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002))); *New York v. Sullivan*, 74 N.Y.2d 305 (1989) ("A court is obliged to interpret a statute to effectuate the intent of the Legislature.  When its language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of its words.").

There is no basis to read the requirements of Section 195.1(a) into Section 195.3 when the New York Legislature clearly declined to do so.  Courts have repeatedly given deference to similar legislative decisions to omit language from statutes, even if that language appeared in earlier versions of the same statute.  *See, e.g., CFCU Cmty. Credit Union v. Hayward*, 552 F. 3d 253, 265 (2d Cir. 2009) (denying party's attempt to read into statute language found in previous amendment to statute, and holding that "[i]f the Legislature intended the Amendment to be prospective only (i.e., not to apply to pre-existing debts) it could easily have carried over the language from the 1977 Amendment.  It chose not to do so").  As Defendants properly disclose the company's legal name — Anjost Corp.[6] — on their wage statements, Plaintiffs' claim that Defendants' paystubs violate the NYLL for all non-exempt employees is simply meritless. Summary judgment on this claim must be denied.[7]

---

[6] Defendants have been operating under this name since at least 1979.  *See* Possidente Decl., Ex. 7.

[7] It bears noting that annual wage statements are not at issue here.  As Judge McMahon succinctly stated in her decision on class certification, "[i]n their Reply, Plaintiffs contend for the first time in this lawsuit that Defendants also failed to provide proper *annual notices* to non-exempt employees as required under NYLL § 195(1).  Plaintiffs did not plead this in the [Second Amended Complaint].  Therefore, I cannot certify a class on this claim." *Flores*, 2012 WL

Plaintiffs' remaining claims here are equally flawed.  Plaintiffs make the conclusory allegation that "the wage statements for all non-exempt employees fail to include any spread of hours pay in gross pay, for those employees whose workday exceeded ten hours."  Pls. Br. at 19. Plaintiffs — who have conducted no class discovery — simply cannot support this statement with any documentary evidence establishing that, without any issues of fact, that every wage statement for every employee does not include spread of hours pay: Plaintiffs simply do not have those wage statements, nor do they have evidence that Defendants never paid any eligible employee spread of hours pay.  Instead, Plaintiffs seek to extrapolate from one employee's deposition testimony to reach a conclusion that, according to Plaintiffs, applies across the entire class.  That flawed logic does not support summary judgment.

Plaintiffs also contend that Defendants' paystubs do not appropriately notify recipients of the tip credit, or reflect proper overtime rates.  These claims are meritless.  As the attached records indicate, Defendants' pay stubs reflect proper tip credit notifications and further establish that Defendants paid Plaintiffs time and one-half in overtime pay.  For those reasons, summary judgment must be denied.

## VII.   DEFENDANTS DO NOT IMPROPERLY DEDUCT FOR THE COST OF UNIFORMS FROM PLAINTIFFS' COMPENSATION

Plaintiffs' claim that Defendants improperly deducted the cost of a uniform from the wages of Plaintiffs fails because there is a clear issue of fact as to whether the complained of "uniform" actually qualifies as a uniform under the Labor Law.  The so-called uniform at issue here consists of a t-shirt, a hat, or both.[8]  *See* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at

---

2339267, at *3, n.1 (emphasis in original).  Plaintiffs cannot constantly amend their complaint in an attempt to manufacture a wage and hour violation after a court imposed deadline.

[8] This "uniform" refers only to the clothing worn by retail division employees.  Plaintiffs have presented no evidence as to whether other employees wear uniforms and, if so, what those

40:21-42:2).  Under the wage regulations in place for the vast majority of the relevant time period of this lawsuit, a "required uniform" referred to "clothing worn by an employee at the request of an employer, while performing job-related duties" unless such "clothing . . . may be worn as part of an employees' ordinary wardrobe."  N.Y. COMP. CODES R. & REGS. tit. 12, § 137-3.13.[9]  The "uniform" here easily meets this exception.  Retail division employees wore either a t-shirt or hat while working.  *See* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 40:23-24).  Those garments fit squarely within any reasonable definition of what constitutes "ordinary wardrobe."  Multiple courts have agreed.  *See, e.g.*, *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) (finding that "white button-down shirts, black dress pants, black socks, and black leather shoes . . . do not qualify as a uniform" (internal quotation marks omitted)); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 512 (S.D.N.Y. 2010) (noting that "black shirts and pants" qualify within the ordinary wardrobe exception).

Based on those holdings, courts in this district have found that the question of what constitutes "ordinary wardrobe" is a factual issue inappropriate for summary judgment.  *See, e.g.*, *Ramirez v. CSJ & Co., Inc.*, No. 06 Civ. 13677(LAK), 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007) ("Although I am sorely tempted, given current dress norms, to hold that a blue T-shirt bearing a deli's name and logo is 'clothing that may be worn as part of an employee's ordinary wardrobe,' the question probably is better decided by a trier of fact than as a matter of law." (quoting N.Y. COMP. CODES R. & REGS. tit. 12, § 137-3.13)).  Critically, Judge McMahon agreed with this holding in the decision on class certification: "In any event, the issue [of what

---

uniforms consist of.  Indeed, Mr. Marcotrigiano testified that "he didn't know" whether the delivery workers wore uniforms.  *See* Possidente Decl., Ex 4 (Marcotrigiano Depo. at 41:25).  That creates yet another issue of fact requiring denial of summary judgment.

[9] Defendants' practices regarding this issue have also changed based on amendments to applicable New York State laws.  *See* Zaro Decl. at 15.  This also mandates denial of summary judgment.

constitutes a uniform] does not appear to be resolvable as a matter of law." *Flores*, 2012 WL 2339267, at \*14.

## VIII.   <u>PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES</u>

Finally, Plaintiffs' attempt to receive liquidated damages is directly contradicted by its explicit waiver in their Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23.  In language that could not be clearer, Plaintiffs freely and unilaterally "…waive[d] *any statutory right* to recover liquidated damages as a condition of being certified as a class."  Br. in Support of Pls. Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, at 6 n.1 [ECF Dkt. No. 49] (emphasis added).  Judge McMahon explicitly accepted that waiver in her decision on class certification.  *See Flores*, 2012 WL 2339267, at \*5 ("Plaintiffs have further agreed to waive liquidated damages as a condition of being certified as a class.").  There are no qualifications to either Plaintiffs' unilateral waiver or Judge McMahon's acknowledgement of its effectiveness.  It is accordingly the law of the case, and should not be modified.  *See, e.g,. Tompkins v. Allied Barton Sec. Servs.*, No. 09 Civ. 1954 (RMB) (JLC), 2010 WL 1416066, at \*1 (S.D.N.Y. Apr. 8, 2010) (denying leave to amend under law of the case doctrine, and nothing that "'as a rule courts should be loathe to [revisit prior decisions of its own or of a coordinate court] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *In re SCOR Holding (Swiz.) AG Litig.*, 537 F. Supp. 2d. 556, 573 (S.D.N.Y. 2008) (denying request to modify previous ruling because "[t]hat holding is thus the 'law of the case' and will not be revisited . . .").  Plaintiffs' voluntary waiver of all liquidated damages, given as a pre-condition to obtaining class certification, mandates denial of summary judgment on this claim — by their own choice, Plaintiffs are simply not entitled to any liquidated damages.

Even if Plaintiffs' waiver was somehow not effective here, there is no evidence to support a finding of liquidated damages. As an initial matter, it is unclear the statute under which Plaintiffs seek to recover liquidated damages. Irrespective of Plaintiffs' murky arguments on this point, there is no basis to grant liquidated damages under either the FLSA or the NYLL.

With respect to the FLSA, Plaintiffs contend that they are entitled to liquidated damages because Defendants "willfully" failed to pay them appropriate wages. *See* Pls. Br. at 21. But courts have held that when a defendant acts "in good faith" and had "reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," a court should not award liquidated damages under the FLSA.[10] *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2011 WL 317971, at *10 (E.D.N.Y. Jan. 28, 2011) (internal quotation marks omitted). At the summary judgment stage, "Plaintiffs must show that 'there is an absence of evidence to support' a good faith and reasonableness affirmative defense." *Id.* (quoting *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)); *see also Gayle v. Harry's Nurses Registry, Inc.*, 07-CV-4672 (NGG) (MDG), 2010 WL 5477727, at *6 (E.D.N.Y. Dec. 30, 2010) (holding that good faith and reasonableness acts as an affirmative defense to liability for liquidated damages). The NYLL has a similar requirement.[11] There, Plaintiffs are not entitled to liquidated damages if

---

[10] If an employer "knowingly" violates the FLSA, the statute of limitations is exceeded from two years to three years. *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (stating that the FLSA "provides a two-year statute of limitations unless the violations are 'willful,' in which case a three-year statute of limitations applies." (citing 29 U.S.C. § 255(a))). Plaintiffs do not move for summary judgment on this issue. Nor could they, because Defendants have not knowingly violated the FLSA. *See* Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 51:7-12).

[11] In any event, there is no reason to award damages under both statutes. Courts have routinely rejected attempts by Plaintiffs to receive damages under both the Labor Law and the FLSA's liquidated damages provisions. *See, e.g., Paz v. Piedra*, No. 09 Civ. 03977(LAK)(GWG), 2012 WL 121103, at *12 (S.D.N.Y. Jan. 12, 2012).

Defendants prove "a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. LAB. LAW § 198(1-a).

In either case, Plaintiffs are not entitled to liquidated damages.  Although Plaintiffs trumpet the fact that Defendants "did not retain an attorney to conduct wage and hour compliance until after they were sued" (Pls. Br. at 22), that does not establish that Defendants did not act in good faith in complying with the statutes at issue here.  Quite the opposite, the record reflects that Defendants have never willfully violated any minimum wage laws:

Q:    Did you ever knowingly violate any minimum wage laws?

A:    Never.

Q:    Have you knowingly violated any minimum wage requirements under the law?

A:    Never.

Possidente Decl., Ex. 4 (Marcotrigiano Depo. at 51:7-12).

The fact that Plaintiffs' summary judgment motion is meritless further underscores this point.  For example, as fully discussed above, Defendants distribute paystubs that comply with all of the requirements of the WTPA, *see supra* Section VI, and appropriately informed Plaintiffs that their wages would be reduced due to the tip credit.  *See* Zaro Decl., ¶ 3.  Defendants also acted appropriately to ensure that customers understood the true nature of both the service and delivery charges.  *See id*. at ¶¶ 6-7, 12-13.  Defendants have also timely modified their wage and hour policies in response to changes in the law.  *See id*. at ¶ 15.  It is thus clear that Defendants worked to comply with all pertinent wage and hour statutes.

Finally, any determination on the issue of liquidated damages is premature until the Court has heard from Defendants on this issue.  Because Defendants contend that they have worked to comply in good faith with the requirements of both the FLSA and the NYLL, Defendants are

entitled to present those efforts to this Court in detail.  Other courts in this District have denied

summary judgment for just this reason.  *See, e.g, Zubair v. Entech Eng'g P.C.*, 808 F. Supp. 2d

592, 600 (S.D.N.Y. 2011) ("Without the opportunity to hear testimony describing with

particularity Defendants' efforts to comply with the overtime requirements, the Court cannot

determine whether Defendants acted with good faith reasonableness sufficient to preclude an

award of liquidated damages.").  Plaintiffs' motion for summary judgment should accordingly be

denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied.

Dated:  New York, New York
        September 28, 2012

                                    **VENABLE LLP**


                                    _____/s/_____
                                    Michael J. Volpe
                                    Adam G. Possidente
                                    mjvolpe@venable.com
                                    Rockefeller Center
                                    1270 Avenue of the Americas, 24th Floor
                                    New York, New York 10020
                                    (212) 307-5500 (tel.)
                                    (212) 307-5598 (fax)

                                    *Attorneys for Defendants Anjost Corp.*
                                    *d/b/a Zaro's Bakery, Stuart D. Zaro, and*
                                    *Joseph Zaro*

25